CHARLES T. SAMMIS, Respondent, *v.* TOWN OF HUNTINGTON, Appellant.

Second Department, February 21, 1919.

Towns — town of Huntington — suit in equity to recover value of erections made upon lands leased from former trustees of town — suit properly brought against town — constitutional law — statute transferring duties of trustees to town officials — authority of officials to deal with private property consisting of rights to erections upon leased property — liability under lease not a town charge — practice — when separate order on overruling demurrer to complaint superfluous.

In a suit on a lease of town lands under water, granted in the year 1866 by the " trustees of the Freeholders and Commonalty of the town of Huntington " it was alleged that after the death of the lessee the leasehold interest passed to the plaintiff who, having been ordered to vacate the premises, seeks to enforce rights of renewal and to have judicially assessed the appraised valuation of buildings and other erections upon the property. By chapter 492 of the Laws of 1872 said trustees of the town of Huntington were abolished and all their rights, privileges, duties, etc., vested in the town officials.

*Held,* that under chapter 492 of the Laws of 1872 and under the provisions of the Town Law the suit was properly brought against the town.

Chapter 492 of the Laws of 1872 abolishing the former trustees of the town of Huntington, etc., and transferring their duties to the town officials, being to simplify the election of such officials and to prevent duplication of public duties, was constitutional.

Since the rights to the erections and the liabilities under said lease constituted private property of the town which is not held or managed in its governmental capacity, it requires no legislative authority to enable its officials to deal therewith as the town interests may require.

The liability under said lease is not a town charge to be audited under the provisions of the Town Law relating to liabilities against a town in its public capacity.

The right to sue in equity to have valued erections added by a tenant under a covenant for a conditional renewal is well settled.

Where the sole issue in such a suit is the value and recovery of erections added to the leasehold, an objection that the plaintiff's present interest is not entire since a strip of land had been severed and assigned to a lighting company, cannot avail as against the main basis of the plaintiff's equities.

A separate order entered on overruling a demurrer to a complaint should be regarded as superfluous where instead of bringing up the point on motion there had been a trial on an issue of law and an interlocutory judgment entered.

APPEAL by the defendant, Town of Huntington, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Suffolk on the 18th day of July, 1918, overruling a demurrer to the complaint with leave to defendant to answer on payment of costs.

Defendant also appeals from an order entered in said clerk's office on the 20th day of June, 1918, overruling the said demurrer.

*Willard N. Baylis* [*George P. Sanborn* and *Frederick H. Sanborn* with him on the brief], for the appellant.

*Rowland Miles,* for the respondent.

PUTNAM, J.:

This was a suit in equity on a lease of town lands under water. It was to enforce rights of renewal and to have judicially assessed the appraised valuation of buildings and other erections upon property leased under peculiar covenants. Such lease had been granted in the year 1866 by the "trustees of the Freeholders and Commonalty of the town of Huntington" to the late Henry J. Scudder for a term of fifty years at a rental of fifteen dollars per year. After his death, this leasehold interest is alleged to have passed to the plaintiff.

The complaint states that, at and prior to October 1, 1866, such trustees were the owners in fee of the described lands and premises which appear to have been in and about Northport harbor. It refers to the following provision of this demise: " And it is further covenanted and agreed by and between the parties hereto, their successors, executors, administrators, heirs and assigns that at the expiration of said term of 50 years, the parties of the first part or their successors in office will renew and extend the term of this lease for 50 years further and in addition to the term hereby granted, upon such return of rent as may then be agreed upon by and between the parties hereto, their successors, heirs, executors, administrators or assigns, and in the event of a disagreement as to the amount of rent that the said parties of the first part their successors, will take and pay for at a value to be assessed by parties chosen, as is usual in cases of difference of like character, by the respective parties, their successors, heirs, executors, administrators or assigns, all buildings and erections other than docks or earth filling then on said premises."

The complaint further shows that in April, 1895, a strip fifty feet wide along the southerly side of the premises had been sold and assigned to the Northport Electric Light Company, and that in asking for a renewal the plaintiff excepted this strip; that after repeated discussions between plaintiff " and the Trustees of the defendant," they disagreed as to the amount of the rental.

An offer to join in choosing appraisers is set forth, with defendant's refusal. Plaintiff avers that failing to live up to the terms of the lease defendant's said trustees have ordered plaintiff to vacate said premises.

Plaintiff prays judgment, that the parties' rights be determined, that the value of such erections be adjudged to plaintiff, and, until plaintiff be paid such ascertained value, that the defendant be enjoined from interfering with the use of such erections. Defendant demurred for insufficiency. The learned justice at Special Term has overruled this demurrer.

The defendant urges that this action should not have been against the town, but against the lessor named in this lease,

namely, the " trustees of the Freeholders and Commonalty of the town of Huntington." Although such was the name or title in the charter granted by Thomas Dongan in 1688, and repeated in the Fletcher patent of 1694, such colonial grants in these forms were not to the named patentees individually, but were for the town. (*Denton* v. *Jackson*, 2 Johns. Ch. 320; *North Hempstead* v. *Hempstead*, Hopk. Ch. 288; affd., 2 Wend. 109; *Lawrence* v. *Town of Hempstead*, 155 N. Y. 297; *Lowndes* v. *Huntington*, 153 U. S. 1.)

By Laws of 1872, chapter 492, such former trustees of Huntington were abolished, and it was enacted that " The supervisor, town clerk and assessors of the town of Huntington, and their successors, are hereby created *ex-officio* the board of trustees of the town of Huntington, and legal successors of the trustees of the freeholders and commonalty of the town of Huntington, and vested with all the rights, privileges, powers, duties and jurisdiction heretofore enjoyed and exercised by such trustees, over the real and personal property of the town of Huntington." Inasmuch as this act directed the president of such prior trustees to deliver to the president of their successors then created all records, books, papers, documents, moneys and property belonging to said town, on this demurrer it must be presumed that such town officials have since exercised the functions of such former trustees of the freeholders and commonalty of Huntington. Similar legislation was later enacted for other Long Island towns.*

Such change being to simplify the election of such officials, and to prevent duplication of public duties, was constitutional. (*People ex rel. Squires* v. *Hand*, 158 App. Div. 510.) Under

---

* For North Hempstead, Laws of 1900, chapter 502, as amended by Laws of 1909, chapter 262. For Southampton, Laws of 1902, chapter 133. (See *Lane* v. *Tilton*, 43 Misc. Rep. 214.) Hence many modern suits touching shore rights and town common lands are now in the name of the town, and not the trustees. (*Town of Babylon* v. *Darling*, 207 N. Y. 651; *Tiffany* v. *Town of Oyster Bay*, 209 id. 1; *Town of Oyster Bay* v. *Stehli*, 221 id. 515; *Town of Islip* v. *Estates of Havemeyer Point*, 224 id. 449.) Title to the common lands of Brookhaven appears to be still vested in the trustees of the freeholders and commonalty of that town, although the term of office and mode of election of such officials have been changed by Laws of 1898, chapter 480, and Laws of 1899, chapter 73.— [NOTE BY THE COURT.

the Town Law (Consol. Laws, chap. 62 [Laws of 1909, chap. 63], § 11) the present suit is to be maintained against the town, and not against its officials.

It is, however, argued that the rights to such erections and the liabilities under such a lease are not recognized as within the corporate capacities of towns. But this subject matter is the proprietary, private property of the town of Huntington, which is not held or managed in its governmental capacity. Therefore, it requires no legislative authority to enable its officials to deal therewith, as the town interests may require. (*Town of Islip* v. *Estates of Havemeyer Point,* 224 N. Y. 452.) This supports also the conclusion of the learned justice at Special Term, that the liability under such a proprietary lease is not a town charge to be audited under sections 133 and 170 of the Town Law (as amd.) which relate to liabilities against a town in its public capacity and not as such a covenantor on a lease. (See 104 Misc. Rep. 7.)

The right to sue in equity for such relief by having valued such erections added by a tenant under a covenant for a conditional renewal is well settled. (*Reformed Protestant Dutch Church of New York* v. *Parkhurst,* 4 Bosw. 491; *Dunnell* v. *Keteltas,* 16 Abb. Pr. 205. See, also, *Van Beuren* v. *Wotherspoon,* 12 App. Div. 421; 22 id. 628; 164 N. Y. 368.)

If this suit were also to enforce the covenant for a renewal lease, the point that the plaintiff's present interest is not entire, since a strip of land had been severed and assigned to the Northport Electric Light Company, might be material. But where the issue is the value and recovery of erections added to the leasehold, such objection cannot avail as against the main basis of the plaintiff's equities.

The other grounds urged have been carefully considered, but are rather for the hearing upon the merits than in support of this demurrer. (*Western Ins. Co.* v. *Eagle Fire Ins. Co.,* 1 Paige, 284, 286.)

I accordingly recommend that the interlocutory judgment upon the demurrer be affirmed, with costs, leave, however, being given to defendant to withdraw its demurrer and to answer upon payment of costs within twenty days from the entry of this order of affirmance.

The separate *order* entered on overruling such demurrer should be regarded as a superfluous detail, where, instead of bringing up the point on motion, there had been a trial of an issue of law and an interlocutory judgment entered, as here appears. As to this separate order, therefore, the defendant's appeal is sustained, but without costs.

Jenks, P. J., Mills, Kelly and Jaycox, JJ., concurred.

Interlocutory judgment affirmed, with costs; defendant granted leave to withdraw its demurrer and to answer upon payment of costs within twenty days.