Crystal OLSON, Plaintiff and Appellant,

v.

Lynn PETERSON, as Executor of the Estate of Carrie Glaholt, Deceased, Defendant and Appellee.

Civ. No. 9677.

Supreme Court of North Dakota.

Jan. 24, 1980.

Ralph W. Bekken, Stanley, for plaintiff and appellant, on brief.

A. R. Tossett, of Anderson, Tossett & Dobrovolny, Minot, for defendant and appellee.

VANDE WALLE, Justice.

Crystal Olson appeals from the district court's judgment requiring Lynn Peterson, as executor of the estate of Carrie Glaholt, deceased, to prepare and sign the appropriate deed from the estate of Carrie Glaholt to Irene Lee, beneficiary under the codicil to a will. We reverse.

The parties to this action stipulated to the facts in district court. No additional evidence was submitted to the district court.

The stipulated facts reveal that in 1969 Carrie Glaholt entered into a farm contract with Crystal Olson. That contract provided for a lease of the property by Crystal for a period of ten years and contained the following provision which is the basis for the dispute in this lawsuit:

"It is further agreed that the Party of the First Part [Olson] shall have an absolute option to purchase the demised premises if and when the party of the Second Part [Glaholt] shall decide to sell the

same. In the event the Second Party does desire to so sell, the Party of the First Part shall be notified, in writing, and be given 30 days' notice of such intent and during which period they shall notify the Second Party of their intent to exercise such option. This option shall also be binding upon the heirs successors or assigns of Second Party, upon the demise of the Second Party, in which event the First Parties may purchase the demised premises for the sum of $10,000 or the appraised value, whichever is lower, at the time of the demise of the Second Party."

Carrie Glaholt died on September 24, 1974, leaving a will dated November 18, 1963, to which she had added a codicil on November 29, 1966. That codicil devised the property to Irene Lee on the condition that she pay $10,000 to the estate. Following Carrie's death, Crystal made an offer to purchase the land in question. That offer was rejected by Peterson, as executor of Carrie's estate. Crystal brought action in district court to require Peterson, as executor, to execute and deliver a good and sufficient warranty deed to the property upon the payment of $10,000 by Crystal.

Subsequent to the submission of the stipulation of facts and trial briefs to the district court, the court issued its findings of fact, conclusions of law, and order for judgment. The pertinent findings of the trial court are:

### "VI.

"This option language gave tenant an incipient right to purchase:

"a. If owner shall decide to sell; or
"b. If owner's successors (heirs, successors, assigns) shall decide to sell.

### "VII.

"In the event that the owner shall decide to sell, the option language fails to fix any purchase price.

### "VIII.

"In the event that the owner's successors decide to sell, the option language sets a purchase price of $10,000 or appraised value, whichever is lower.

### "IX.

"There is no evidence that owner ever desired to sell or notified tenant, in writing, of any intent to sell.

### "X.

"The Farm Contract also says:

"'All rights and benefits under this contract vested in the second party, shall extent [sic] to . . . the successors in interest' of the second party.

### "XI.

"There is no evidence, and it is also undisputed, that owner's successors ever desired to sell or notified tenant, in writing, of any intent to sell."

Based upon its findings the trial court made the following pertinent conclusions of law:

### "I.

"This option language gave tenant a right of first refusal.

### "II.

"A right of first refusal is distinguished from an absolute option in that the right of first refusal does not entitle a lessee to compel an unwilling lessor to sell but requires lessor, when and if he decides to sell, to offer the property first to Lessee. *Cities Service [v. C. E. Estes et al.]* case in [208 Va. 44] 155 SE 2nd [2d] 59 (1967).

### "III.

"In any event, the option ran co-extensive with the Farm Contract and has the

same January 1979 termination unless the conditions under which it might be exercised by tenant arose before that date.

"IV.

"Before death of owner, the tenant's option might arise only upon this condition; 'if and when' the owner shall decide to sell.

"V.

"One of the rights and benefits of owner, Glaholt, under the Farm Contract was the right to decide to sell or not to sell.

"VI.

"One of the rights and benefits of Glaholt's successors under the Farm Contract was the right to decide to sell or not to sell.

"VII.

"Because the condition necessarily precedent to the option was never met during the term of the Farm Contract, the option remained inchoate. It ended when the Farm Contract ended.

"VIII.

"A 1966 Codicil to owner's 1963 Last Will devises SE–9 to Irene Lee, upon condition she pay $10,000 to the estate. This devise is not a 'sale' or decision to sell such as would otherwise trigger tenant's option. Heidlebaugh [v. Korn] case in [Mont.] 498 P.2[d] 1195 (1972)."

Following the issuance of the trial court's findings of fact, conclusions of law, and order for judgment, a judgment requiring the executor to prepare and sign a deed from the estate of Carrie Glaholt to Irene Lee upon the payment by Irene of $10,000 to the estate was entered. Crystal has appealed from that judgment and has set forth the following issues:

1. Did the trial judge err by failing to conclude that the farm contract creates both a right of first refusal and an absolute option?

2. Did the trial judge err by failing to construe the contract in favor of the optionee?

3. If the contract created only a right of first refusal, did the trial judge err in not concluding that a testamentary transfer for value constituted a sale under the contract?

■ Although the trial court issued findings of fact, those findings were based upon a stipulation of facts entered into by the parties. We have previously held that Rule 52(a), N.D.R.Civ.P., prohibiting this court from setting aside findings of fact unless we find them to be clearly erroneous, does not apply where the parties have stipulated to the facts and the evidence before the trial court is documentary in nature, because we have before us precisely the same evidence as did the trial court. Butts Feed Lots v. Board of Cty. Commissioners, 261 N.W.2d 667 (N.D.1977); Matter of Estate of Koch, 259 N.W.2d 655 (N.D.1977); Dolajak v. State Auto. & Cas. Underwriters, 252 N.W.2d 180 (N.D.1977); E. E. Bach Millwork Co. v. Meisner & Co., 228 N.W.2d 904 (N.D.1975). In determining whether a finding is of fact or of law, the label placed thereon by the trial court is not conclusive. Butts Feed Lots, supra. We construe finding of fact VI, that the option language in the farm contract gave the tenant an incipient right to purchase only if the owner (Glaholt) or her heirs decided to sell, a conclusion of law rather than a finding of fact.

■ This court has previously held that "Rules of construction relating to contracts generally govern with reference to the construction of a lease." Drees Farming Assn. v. Thompson, 246 N.W.2d 883, 885 (N.D. 1976). In interpreting a written contract the intention of the parties is to be ascertained from the writing alone if possible. Sec. 9–07–04, N.D.C.C. The construction of a written contract to determine its legal effect is always a question of law for the

court to decide. *Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417 (N.D. 1979); *Metcalf v. Security Intern. Ins. Co.*, 261 N.W.2d 795 (N.D.1978); *Stetson v. Blue Cross of North Dakota*, 261 N.W.2d 894 (N.D.1978).

Crystal argues that the provision in dispute in the farm contract must be construed to give her a right of first refusal during the lifetime of Carrie or during the ten-year term of the lease or an absolute option to purchase for $10,000 if Carrie died during the ten-year period of the lease.

Both Crystal and the executor cite *Berry-Iverson Co. of North Dakota v. Johnson*, 242 N.W.2d 126 (N.D.1976), in which this court construed an "option to purchase" clause in a lease as a preferential right to purchase. Examination of the clause in that agreement, however, clearly reveals the clause gave the lessee a right to purchase only when the owner decided to sell the premises. Another clause in the lease made it binding upon the successors and assigns of the owner and the lessee. The purchasers of the property from the lessor had contended that the option clause was neither definite nor certain enough to permit the courts to enforce it. This court concluded the clause was sufficiently definite to require its enforcement. Because the language of the clause in *Berry-Iverson* is substantially different from that at issue in this case, the decision is not of great assistance nor are the other cases cited by both parties. Although those cases involve interpretation of language which is somewhat similar to the clause in the instant contract, there are sufficient differences in the language of the contract interpreted to distinguish those cases. We must look to the specific language of the clause in the farm contract entered into between Crystal as lessee and Carrie as lessor to determine its intent. For convenience we repeat the language of that clause:

"It is further agreed that the Party of the First Part [Olson] shall have an absolute option to purchase the demised premises if and when the party of the Second Part [Glaholt] shall decide to sell the same. In the event the Second Party does desire to so sell, the Party of the First Part shall be notified, in writing, and be given 30 days' notice of such intent and during which period they shall notify the Second Party of their intent to exercise such option. This option shall also be binding upon the heirs successors or assigns of Second Party, upon the demise of the Second Party, in which event the First Parties may purchase the demised premises for the sum of $10,000 or the appraised value, whichever is lower, at the time of the demise of the Second Party."

■ The contract was on a printed form but the above-quoted provision was typewritten and obviously added to the contract form by the parties. The clause is far from a model of clarity, but this court has previously held that a lease is ordinarily construed against the lessor in case of ambiguity. *Drees Farming Assn. v. Thompson, supra*; *Hughes Realty Company v. Breitbach*, 98 N.W.2d 374 (N.D.1959). In *Hughes*, this court stated:

"According to the great weight of authority, a lease ordinarily is construed against the lessor in case of ambiguity. [Citation omitted.]

"Therefore, in construing the provisions in the lease here before the court relative to the option to renew, any uncertainty in the language of the option must be construed in favor of the tenant and against the lessor. The lessor had the power to incorporate terms and conditions in his own favor and, if he neglected to do so, he alone is responsible." 98 N.W.2d at 377.

■ Applying this principle of construction to the specific language of the clause at issue, we conclude that Crystal had a right of first refusal during the life of Carrie or for ten years, whichever period was shorter; that after Carrie's death Crystal had an absolute option to purchase.

The clause provides that upon the death of Carrie the option is binding upon Carrie's heirs, successors, or assigns. The district court concluded that the "option" was a right of first refusal; that upon Carrie's death the obligations thereunder passed to her heirs; and that only if the heirs determined to sell the property was Crystal entitled to purchase. The latter part of the clause governing procedures in the event of Carrie's death is explained by the trial court to mean that if the heirs determine to sell Crystal has the right to purchase for the sum of $10,000 or the appraised value at the time of Carrie's death, whichever is lower.

We do not agree with the district court's analysis of the language used. If Crystal's right prior to Carrie's death was only the right of first refusal, which we agree that it was, presumably Crystal would have had to pay the price stipulated by Carrie because no price is specified in the contract. See *Berry-Iverson Co. of North Dakota v. Johnson, supra.* After Carrie's death, however, Crystal had the right to purchase for $10,000 or the appraised value, whichever was lower. Thus the option which is made obligatory upon Carrie's heirs cannot be the "option" or right of first refusal referred to in the sentences immediately preceding it. To construe the last sentence as only a right of first refusal if Carrie's heirs determined to sell the property is not logical because the price is established at $10,000 or the appraised value, whichever is lower, at the time of Carrie's death. Should Carrie have died shortly after the execution of the lease and the heirs determined not to sell the land until shortly prior to the end of the lease, the appraised value at Carrie's death would appear to have little relevance to the value at the time.

The district court was also concerned with a printed portion of the contract form which provided:

"All rights and benefits under this contract vested in the second party, shall extend to his principals, in cases where he shall have acted as an agent in the making of this contract, and in all cases, to the successors in interest of both himself and his principals."

■ The district court concluded that one of the rights of Carrie's successors was the right to sell or not to sell the property. As we have already noted, we do not agree with that conclusion. Furthermore, if there is a conflict between two provisions in an instrument, the parts which are purely original control those which are copied from a form. Sec. 9–07–16, N.D.C.C.

We construe the provision of the lease in question to grant Crystal a right of first refusal during the period of the lease and until Carrie's death and, after Carrie's death if the lease is still in effect, an option to purchase for $10,000 or the appraised value, whichever was lower.

Because of our holding on the first issue we do not find it necessary to consider the other issues raised by Crystal on appeal. The judgment of the district court is reversed and the case is remanded with instructions to enter a judgment requiring Lynn Peterson, as executor of the estate of Carrie Glaholt, to prepare and sign the appropriate deed from the estate of Carrie Glaholt to Crystal Olson upon the payment by Crystal Olson of the sum of $10,000 to the estate of Carrie Glaholt within the time specified by the district court.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.